# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LYNNE R. BYRNES** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| v. | : | |
| | : | **No. 07-4931** |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM

**NORMA L. SHAPIRO, S.J.**                                                                                         **JULY 16, 2010**

This is an action brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Lynne R. Byrnes's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the court are plaintiff's objections to the Report and Recommendation of Magistrate Judge M. Faith Angell that the relief sought by plaintiff be denied and judgment affirming the decision of the Commissioner be entered in favor of defendant.

## BACKGROUND

On December 31, 2001,[1] plaintiff protectively filed an application for DIB alleging disability beginning February 20, 1998. The claim was denied by the state agency on March 20, 2002, and plaintiff filed a timely written request for hearing. Plaintiff appeared before the Administrative Law Judge ("ALJ") on December 10, 2002. Following a limited hearing on

---

[1] There is some confusion in the record about the filing date of the application at issue. The court is relying on the protective filing date listed on part of the application. Tr. 88. This date is confirmed by the plaintiff in a July 28, 2003 letter, tr. 28, and by the Appeals Council in their remand order, tr. 68. The ALJ refers to the application at issue as the November 9, 2001 application. Tr. 17, 824. The precise date of the application is immaterial to the disposition of this action.

procedural issues, tr. 796-818, the administrative law judge issued an Order of Dismissal based on the doctrine of *res judicata*, "finding that the current claim involved the same facts, issues, time frame and party reflected in the prior [application]." Tr. 69. Plaintiff requested review by the Appeals Council. While plaintiff's Title II application was pending before the Appeals Council, plaintiff protectively filed an application for supplemental security income ("SSI") on May 21, 2003. Plaintiff was found disabled, for purposes of SSI, as of May 1, 2003. The Appeals Council issued an Order of Remand on March 24, 2005. Tr. 68-70. In the order, the Appeals Council reopened the determination on the plaintiff's December 31, 2001 application for DIB and remanded the claim for further proceedings to determine whether the plaintiff was disabled at any time on or before June 30, 1998, the plaintiff's date last insured. The Appeals Council also affirmed the finding by the state agency that plaintiff was disabled, for SSI purposes, beginning May 1, 2003. Tr. 68-70.

The ALJ determined that "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on November 9, 2001, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through June 30, 1998, the date last insured." Tr. 23. On October 26, 2007, the Appeals Council denied plaintiff's Request for Review and adopted the ALJ's decision as the final decision of the Commissioner. Tr. 6-9.

The ALJ concluded that plaintiff was not under a disability within the meaning of the Social Security Act at any time through the date last insured. Tr. 18. The ALJ found:

1. Plaintiff last met the insured status requirements of the Social Security Act on June 30, 1998.
2. Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.
3. Through the date of last insured, plaintiff had the following severe

impairments: endometriosis status post total hysterectomy in February 1998 and intrapelvic adhesions status post lysis[2] in November 1998.
4. Through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
5. Through the date last insured, plaintiff had the residual functional capacity to perform sedentary and light exertion work, which did not require lifting more than 20 pounds and which did not require the performance of detailed or complex tasks.
6. Through the date last insured, plaintiff was unable to perform past relevant work.
7. Considering plaintiff's age (33 years old at date of last insured), her education (at least a high school education), work experience (transferability of job skills not material given plaintiff's age) and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed.

Tr. 21-22.

Plaintiff filed a timely action in this court for review of the adverse decision that was referred to Magistrate Judge Angell for a Report and Recommendation. The Magistrate Judge found:

1. Substantial evidence supports the ALJ's finding that plaintiff's headaches/migraines were not a "severe" impairment.
2. Substantial evidence supports the ALJ's finding that plaintiff's impairments were limited in duration and did not last for a continuous period of 12 months or more.
3. The ALJ did not err in using the grids to find plaintiff was not disabled, and substantial evidence supports the ALJ's determination that plaintiff remained capable of performing light and sedentary work not requiring detailed or complex tasks.

R&R 7, 9, & 12. Plaintiff raised two objections to the Report and Recommendation of the Magistrate Judge:

Objection 1: Plaintiff respectfully objects to the Magistrate Judge's finding that

---

[2] "Lysis" in this context means: "surgery performed to free adhesions of tissues." *Mosby's Medical Dictionary* (8th ed. 2009).

3

> Objection 2: the ALJ did not err in using the grids to find that the plaintiff was not disabled.
>
> Objection 2: Plaintiff respectfully objects to the Magistrate Judge's finding that the plaintiff's impairments did not last for a period of 12 continuous months.

(Pl.'s Objections to the R&R 2, 5). A district court judge makes a *de novo* determination of those portions of a Magistrate Judge's Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1).

## DISCUSSION

### I. Judicial Review of Disability Decisions

The role of this court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000). Substantial evidence is defined as the relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It is more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. *Id.*

It is the ALJ's responsibility to resolve conflicts in the evidence, and to determine credibility and the relative weights to be given to the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the record. *Torres v. Harris*, 494 F. Supp. 297, 301 (E.D. Pa. 1980), *aff'd*, 659 F.2d 1071 (3d Cir. 1981). It is not the role of the court to re-weigh the evidence of record or substitute its own conclusions for that of the ALJ. *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this court, the

Commissioner's factual determinations, if supported by substantial evidence, are conclusive. The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence. *See Fargnoli*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

## II.   Evaluation of the Evidence

### A.   *Utilization of the Medical-Vocational Guidelines Grids*

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a). Following step three, if the claim reaches that point, the ALJ must make a finding of the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence of record. 20 C.F.R. § 404.1520(e). At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f). If unable to perform past relevant work, the ALJ, at step five, considers whether the claimant can do any other work considering the claimant's residual functional capacity, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.

The ALJ found that the plaintiff "had the residual capacity to perform sedentary and light exertion work, which did not require lifting more than 20 pounds and which did not require the performance of detailed or complex tasks." Tr. 20. The ALJ determined that plaintiff could not perform past relevant work, but was not "disabled" as defined by the Social Security Act because there existed other jobs in significant numbers in the national economy that the plaintiff could

5

perform. Tr. 22. The ALJ concluded that "through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work . . . the claimant's age, education, and work experience [would warrant] a finding of 'not disabled' . . . by Medical-Vocational Rules 202.21-202.22. . . . [T]he additional limitations had little or no effect on the occupational base of unskilled light work. A finding of 'not disabled' is therefore appropriate under the framework of this rule." Tr. 22-23.

Plaintiff contends that the ALJ identified two nonexertional impairments[3] that were not accounted for by the grid: (1) the inability to perform complex tasks; and (2) the inability to perform detailed tasks. Plaintiff objects to the ALJ's reliance on the Medical-Vocational Guidelines grid because the grid fails to consider the effect of nonexertional impairments on the occupational base, and the ALJ failed to provide support for his determination that the nonexertional limitations had little or no impact on the occupational base. The Commissioner contends that the ALJ's reliance on the grid is proper because all of the occupations in the grid are unskilled occupations, and by definition do not include detailed or complex tasks.

The Medical Vocation Guidelines and grid are used to assess "whether a work adjustment is possible based on an administrative evaluation of the interaction between a particular RFC used to determine a remaining occupational base in unskilled work and specified factors as to age, education, and work experience." Social Security Ruling ("SSR") 83-11. The grid serves to inform the ALJ on the number of *unskilled* occupations available given a previously determined

---

[3] Limitations and restrictions imposed by a claimant's impairments and related symptoms may be exertional, nonexertional, or a combination of both. 20 C.F.R. § 404.1569a. Exertional limitations relate to the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. Id. All other limitations affecting the claimant's ability to meet the demands of jobs are classified as nonexertional. Id.

6

RFC and the application of various vocational factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a) (emphasis added). "Unskilled work" is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and is distinguished from "semi-skilled" and "skilled" work in that the latter require more "complex" work duties. 20 C.F.R. § 404.1568(a)-(c). Where a claimant has a combination of exertional and nonexertional impairments, the grids can be used as a framework for consideration. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2); SSR 83-14. The ALJ cannot use the grid rules exclusively as a framework for decision-making when an individual has a nonexertional limitation. *Acquiescence Ruling 01-1(3)*, 2001 WL 65745, at *4 (S.S.A.).[4] When assessing a claimant with a nonexertional limitation within the Third Circuit, the ALJ must: (1) produce vocational evidence such as from a vocational expert, or (2) provide notice that the ALJ intends to take administrative notice of the fact that the particular nonexertional limitation does not significantly erode the occupational job base. *Id.* This ruling does not apply when the ALJ relies on an SSR that explains how the particular nonexertional limitation affects a claimant's

---

[4] The acquiescence ruling states in relevant part–

Before denying disability benefits at step five when a claimant has a nonexertional limitation(s), we must: (1) take or produce vocational evidence such as from a vocational expert, the DOT or other similar evidence (such as a learned treatise); or (2) provide notice that we intend to take or are taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational job base, and allow the claimant the opportunity to respond before we deny the claim.

This Ruling does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision.

*Acquiescence Ruling 01-1(3)*, 2001 WL 65745, at *4 (S.S.A.)

occupational job base. *Id.* If the ALJ wishes to rely on an SSR as a replacement for a vocational expert or the taking of administrative notice, "it must be crystal clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational basis." *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005).

The ALJ refers to SSR 83-11, 83-12, 83-14, and 85-15 in support of his decision that plaintiff was not disabled as of the date last insured. Tr. 22. SSR 83-14,"Titles II and XVI: Capability to do other work – the medical-vocational rules as a framework for evaluating a combination of exertional and nonexertional impairments," directs the ALJ's finding that the "additional limitations had little or no effect on the occupational base of unskilled light work." Tr. 23. To rely on this SSR as a substitute for an individualized determination by a vocational expert, there must be a "fit" between the nonexertional limitation and the way in which the rule dictates that such nonexertional limitation impacts the base. *Allen*, 417 F.3d at 406. SSR 83-14 states that when "it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 [is] not . . . affected."

Under this standard, the ALJ was justified in dismissing the impact of plaintiff's nonexertional limitation on her occupational base. The ALJ found plaintiff capable of performing sedentary and light work with some limitation. If plaintiff was able to perform the full range of sedentary and light exertion work, the grid would have directed a finding of not disabled. The nonexertional limitation, no "detailed or complex tasks," restricted the plaintiff to unskilled work, but did not reduce plaintiff's exertional capabilities. Because the grid only considers unskilled occupations, it was "crystal clear" the nonexertional limitation would not

8

erode the occupational base of unskilled sedentary and light work.

Plaintiff argues that the ALJ did not equate non-detailed or non-complex tasks with unskilled work.[5] This argument ignores the ALJ's decision regarding this issue. After step three, the ALJ determined that claimant had the RFC to "perform sedentary and light exertion work . . . which did not require the performance of detailed or complex tasks." Tr. 20. At step four, the ALJ determined that the plaintiff could not perform past relevant work because her RFC now "limited [her] to unskilled work," and her previous jobs consisted of "light, semi-skilled" and "sedentary, semi-skilled" work. Tr. 22. It was apparent the ALJ believed a limitation restricting the plaintiff from performing detailed or complex tasks limited her to unskilled work. Accordingly, the ALJ's use of the guidelines and his reliance upon an SSR at step five to determine plaintiff's occupational base was not an improper application of either the case law or rules established by the Agency. *Allen*, 417 F.3d at 404. The ALJ's decision is supported by substantial evidence.

### B. *Durational Requirement*

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[5]

PLAINTIFF'S COUNSEL: [I] would actually agree with that argument ["that unskilled is unskilled, no matter how you phrase it"] if the limitation the judge put her on [was] only complex tasks, he also said detailed.
    I think you can have unskilled jobs that are still detail oriented, and it is [more than] just the complex, but the detail in combination with the complex. I think on this RFC . . . .
    . . . .
    . . . if you just said complex tasks, I would agree that that probably would have, you know, limited someone to unskilled work.

N.T. 6/3/08 at 7-8.

9

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(D)(1)(A). The ALJ found that "[w]hile the claimant clearly had finite periods of severe pain and functional limitation, these periods did not last for a continuous period of at least 12 months" and "[t]he claimant did not suffer from work-preclusive limitations for a continuous period of at least 12 months." Tr. 21-22.[6] The Magistrate Judge found that substantial evidence supported the ALJ's finding that plaintiff's impairment failed to satisfy the durational requirement under the Social Security Act. 20 C.F.R. § 404.1509. Plaintiff objects to this finding.

Plaintiff established the following severe impairments during the relevant time period: endometriosis status post total hysterectomy in February 1998, and intrapelvic adhesions status post lysis in November 1998. Plaintiff offered medical documentation of impairment back as far as September 1997. Tr. 201 ("patient is . . . having constant daily lower pelvic pain since September 1997") (Physician's Summary for 2/98 procedure), 585 ("severe right lower quadrant pelvic pain for the past 1 ½ years") (Physician's Summary for 11/98 procedure). The ALJ noted the recurring chronic pelvic pain beginning in September 1997, progressing over time, and worsening during plaintiff's menstrual period. The pain affected plaintiff's work, personal life, and daily functions. Tr. 21. Though acknowledging the existence of symptoms and pain from September 1997 to November 1998, as well as an additional surgery for adhesions in February

---

[6] The ALJ, reviewing this claim several years after the date last insured, was not required to consider whether, prior to the date last insured, plaintiff's impairment and resulting inability would have been *expected to last* for a period of not less than 12 months. *Barnhart v. Wilson*, 535 U.S. 212, 223-25 (2002) (finding lawful Agency's interpretation of 42 U.S.C. § 423(D)(1)(A) allowing the use of hindsight when reviewing claims for disability benefits).

2002, the ALJ found that the symptoms were limited in duration and did not last for a continuous period of 12 months or more. The ALJ found particularly persuasive plaintiff's own testimony that: (1) in June 1998, she was the primary caretaker of her children, helped care for her niece and nephew, and was responsible for all the household chores; (2) she worked full time (10 hours per day, 5 days per week) as a restaurant manager during the period from August 1998 to May 1999;[7] and (3) following the November 1998 surgery her symptoms improved significantly. Tr. 21. The ALJ also noted that beginning in February 1999, the plaintiff's treatment focused almost entirely on an injury she sustained on her upper extremity not present prior to her date last insured. *Id.* There is substantial evidence of record in support of the ALJ's determination that the plaintiff was not under a "disability," as defined in the Social Security Act, at any time through June 30, 1998, her date last insured.

## CONCLUSION

There was substantial evidence to support the ALJ determination that Byrnes was not disabled as defined under the Social Security Act prior to June 30, 1998. After consideration of Byrnes's objections, the Report and Recommendation will be approved. An appropriate order follows.

---

[7] At oral argument before Magistrate Judge Angell, counsel for the plaintiff asserted that plaintiff actually testified to working at the restaurant from August 1997 to May 1998. The transcript confirms this, but shows that plaintiff was unsure of the exact dates. Tr. 848-49. Nevertheless, the ALJ could rely upon two separate entries in two separate disability reports that list plaintiff's restaurant employment as September 1998 to May 1999. Tr. 125, 169.